UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANA HERNANDEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | CASE NO. 1:14-CV-23 SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER<br><br>(Doc. 17) |

Plaintiff Juana Hernandez, by her attorney, Jacqueline A. Forslund, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

**I.   Background**

   A. Procedural History

In 2006, Plaintiff first applied for disability insurance benefits and supplemental security income, which were denied in 2009. On June 21, 2010, Plaintiff again applied for disability insurance benefits and supplemental security income. Plaintiff initially alleged onset of disability

date of October 24, 2006, but amended it at the hearing to July 1, 2009. The Commissioner initially denied the claims on November 8, 2010, and upon reconsideration again denied the claims on April 13, 2011.  On April 22, 2011, Plaintiff filed a timely request for a hearing.

On April 25, 2012, and represented by counsel, Plaintiff appeared and testified with the assistance of a Spanish interpreter at a hearing presided over by John Cusker, Administrative Law Judge ("the ALJ").  See 20 C.F.R. 404.929 et seq.  An impartial vocational expert, Thomas C. Dachlet ("the VE"), also appeared and testified.

On June 12, 2012, the ALJ denied Plaintiff's application.  The Appeals Council denied review on November 7, 2013.  The ALJ's decision thus became the Commissioner's final decision.  See 42 U.S.C. § 405(h).  On September 8, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff was 55 years old. She had attended a few years of school in Mexico, and did not speak, read, or write in English. She had worked for fifteen years at a packing house sorting fruit until October 2006. Prior to that, she had worked in the fields.

Plaintiff was being treated for arthritis, anxiety, and depression. Since her date of disability of July 1, 2009, Plaintiff had not worked because she couldn't stand for long periods of time or use her hands as required by her job. Plaintiff could stand for about half an hour and sit for about an hour. She had to keep moving because of her back pain. She could not bend, stoop, or squat. She had trouble using her hands. She could not write or grip things that were heavy, and she could use her hands for about ten minutes before needing to rest them. Plaintiff also complained of daily headaches lasting one to two hours, constant knee pain, constant back pain, constant neck pain, and weight gain which exacerbated her pain.

Plaintiff felt that being depressed and anxious interfered with her ability to work because she couldn't remain calm and did not like to be around people. Plaintiff usually wanted to be enclosed in the dark. She also had problems focusing and concentrating while watching TV.

Plaintiff lived alone without anyone to help her. She dressed and bathed herself, did her own laundry and shopping, and took out the trash. She was unable to vacuum because it hurt her

hands. She had trouble cleaning around the house and it took her longer than usual. She cooked for herself, although she was unable to cook full traditional meals as she had done previously. She took the bus independently to the store. Plaintiff's hobbies included reading or watching TV. Plaintiff also testified that her relatives visited and her daughter called her regularly. She occasionally attended church services.

        C.   <u>Relevant Medical Record</u>

            *1.  Physical Impairments*

Plaintiff received primary care at Madera Community Hospital. The record contains notes from Family Nurse Practitioner Eunice Hall from about 2009 to 2012. Ms. Hall's notes indicate that Plaintiff complained of headaches, pain in her knees, left arm, shoulders, joints, and hands, weakened grip and tender wrists, which caused her to suddenly drop things, anxiety and depression, and various other ailments such as fatigue and dry mouth. Ms. Hall diagnosed Plaintiff with headaches, carpal tunnel syndrome ("CTS"), arthritis, osteoarthritis, bursitis, depression, and hypertension. Ms. Hall prescribed Vicodin, Tramadol, Inderal, and Benazepril, and advised Plaintiff regarding nutrition, weight loss, and avoiding migraine triggers. Ms. Hall noted that Plaintiff's headaches were controlled with medication. With her CTS diagnosis, Ms. Hall prescribed Neurontin for neuropathic pain and referred Plaintiff to a neurologist for CTS. However, this medication was not effective for Plaintiff's hand and wrist symptoms, and Plaintiff did not see a neurologist. In March 2012, Ms. Hall completed a questionnaire from the Office of Disability Adjudication and Review, which listed Plaintiff's impairments as arthritis to her wrists, hands, and joints, associated pain, depressive disorder, headaches, and hypertension. In April 2012, Ms. Hall wrote a letter stating that Plaintiff had chronic pain to both hands because of arthritis.

Plaintiff also received regular pain management care from Henry Ho Kang, M.D., Ph.D beginning in 2007 and continuing into 2012. She saw Dr. Kang for management of pain in her lower back, neck, shoulders, and knees. Dr. Kang diagnosed Plaintiff with tendonitis/bursitis, osteoarthritis, rotator cuff syndrome of shoulder, lumbar disc disorder, lumbosacral spondylosis without myelopathy, discogenic disease of the cervical spine, and cervical spondylosis without

1  myelopathy. At various times, Dr. Kang administered injections to Plaintiff's lower back, left
2  shoulder, and neck.

3  In October 2010, Tahir Hassan, M.D. performed an internal medicine evaluation of
4  Plaintiff at DSS's request. In his report, Dr. Hassan diagnosed Plaintiff with arthritis, pain in her
5  left shoulder, backpain, hypertension, hyperlipidemia, and depression. AR 471. He wrote that she
6  did not use an assistive device for walking and that she was independent in activities of daily life.
7  He also wrote that Plaintiff was negative for headaches and joint pain. AR 469. Dr. Hassan's
8  examination revealed normal findings, including in motor system, gait, cervical spine extension,
9  and elbow and wrist extension and flexion. He found that Plaintiff was somewhat limited in
10 lumbar spine flexion and left shoulder flexion and abduction. Based on his examination, Dr.
11 Hassan opined that Plaintiff was limited to lifting 50 pounds occasionally and 25 pounds
12 frequently. She could stand or walk for about four hours in an eight hour workday and sit for about
13 six hours in an eight-hour workday. She should avoid overhead work because of left shoulder
14 pain, and could only climb, balance, stoop, crawl, and crouch frequently due to back pain. Plaintiff
15 had had visual limitations of precision work due to vision problems. Dr. Hassan opined that
16 Plaintiff had no communicative and environmental limitations. AR 471.

17 In November 2010, David Chan, M.D. completed a physical residual functional capacity
18 assessment. He diagnosed her with left shoulder pain, lumbar degenerative disc disease, and
19 hypertension. AR 473. Dr. Chan similarly opined that Plaintiff was limited to lifting 50 pounds
20 occasionally and 25 pounds frequently. He similarly opined that Plaintiff could sit for about six
21 hours in an eight-hour workday, was limited in reaching in all directions, and did not have any
22 communicative and environmental limitations. However, his assessment differs from Dr.
23 Hassan's, because Dr. Chan opined that Plaintiff could stand or walk for about six hours in an
24 eight-hour workday, as opposed to four. AR 477. While Dr. Hassan said Plaintiff could not
25 perform overhead work due to left shoulder pain, Dr. Chan stated that Plaintiff was limited to
26 overhead reaching with the upper left extremity to "frequently," which is defined as one-third to
27 two-thirds of an eight-hour workday. Dr. Chan assessed no vision problems.

28 In January 2011, Arthur Paredes, M.D. examined Plaintiff for lower back pain sustained

4

after a fall. Dr. Paredes diagnosed Plaintiff with localized secondary osteoarthritis of the lumbar vertebrae and backache. AR 678.

*2. Mental Impairments*

Plaintiff began seeing Evangeline Murillo, M.D., psychiatrist, in February 2008 and continued to see her with some regularity through 2011. At least as of January 2009, Dr. Murillo had diagnosed Plaintiff with major depressive disorder and general anxiety disorder. She prescribed Seroquel and Paxil. AR 508. The records indicate that Plaintiff took Seroquil and Paxil as prescribed by Dr. Murillo through November 2010. Dr. Murillo also prescribed Benadryl to help her sleep. In April 2011, Dr. Murillo prescribed pain killers. AR 600. In July 2011, Dr. Murillo discontinued Paxil in favor of Prozac, keeping all other medications the same. The last prescription date in the record is December 2011.

In October 2010, Harvey Bilik, Psy.D, completed a psychiatric review technique form. He diagnosed Plaintiff with a non-severe affective disorder. Regarding functional limitations, Dr. Bilik marked that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Bilik noted no episodes of decompensation. Dr. Bilik noted in his functional analysis that Plaintiff lived alone and was able to care for her own needs including chores, cooking, paying bills, using public transportation, and attending church. He also noted that Plaintiff "appears well-stabilized currently" under Dr. Murillo's care. AR 455-464.

In November 2010, Dr. Murillo completed a short-form evaluation for mental disorders. She diagnosed Plaintiff with depression which was recurrent and moderate. She also diagnosed Plaintiff with panic attacks and generalized anxiety. Regarding cognitive functioning and thought process, Dr. Murillo indicated that Plaintiff had moderately to severely impaired concentration, moderately impaired memory, and moderately impaired judgment. Dr. Murillo opined that Plaintiff could not usefully perform or sustain the following activities: 1) understand, remember, and carry out complex instructions; 2) maintain concentration, attention, and persistence; 3) perform activities within a schedule and maintain regular attendance; 4) complete a normal workday and workweek without interruptions from psychologically based symptoms; and 5)

5

respond appropriately to changes in a work setting.

In April 2011, H. Biala, M.D. reviewed Plaintiff's record and found that there was no evidence of worsening depression since 2009. AR 524-526. Dr. Biala noted that Plaintiff had missed her appointments in October and November 2010. He also noted that the progress notes consistently showed that Plaintiff had an intact memory, despite Dr. Murillo's November 2011 assessment that Plaintiff had moderate memory impairment. Dr. Biala recommended adopting the not severe RFC finding.

### D. Vocational Expert Testimony

At the administrative hearing, the VE classified Plaintiff's past work as packer (DOT # 920.687-134, medium, unskilled, SVP 2). The ALJ asked the VE to assume a hypothetical person who was able to lift 50 pounds occasionally and 25 pounds frequently, stand or walk with normal breaks for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, push and pull without limitation, climb ladders, ropes, and scaffolds occasionally, reach overhead frequently; and had no communicative or environmental limitations but was limited to simple repetitive tasks. The VE opined that such an individual could perform Plaintiff's past work.

The ALJ then directed the VE to assume a second hypothetical person but who could climb, balance, stoop, crawl, and crouch frequently, but could not do overhead work or precision work. The VE testified that such an individual could not perform Plaintiff's past work.

For the third hypothetical, the ALJ directed the VE to consider an individual with the same physical limitations as in the first hypothetical, but a poor capacity in understanding, remembering, and carrying out simple instructions; complex instructions; maintaining concentration, attention and persistence; performing activities within in a schedule and maintaining regular attendance; completing a normal workday and workweek without interruption; and responding appropriately to changes in the workplace. The VE opined that such an individual could not perform Plaintiff's past work and "no other work is close."

### E. Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. He found that Plaintiff had osteoarthritis,

6

which significantly limited her ability to perform basic work activities. He also found that Plaintiff had headaches, hypertension, obesity, complaints relative to her hands, and depressive disorder, which did not significantly limit her ability to perform basic work activities. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R. 404.1567(c) and 416.967(c), which permits lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking for six hours and sitting for six hours in an eight-hour workday. The ALJ found that Plaintiff had no limits pushing or pulling, could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, and scaffolds; and frequently reach overhead with the left upper extremity. The ALJ concluded that Plaintiff was capable of performing her past relevant work as a packer/sorter as generally performed. Hence, he determined that Plaintiff was "not disabled."

**II.    Legal Standard**

      A.  The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.

*See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

B. Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

8

2005). Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

### III. Discussion

Plaintiff raises several issues for review in this appeal. Plaintiff contends that the ALJ erred at step two of the sequential analysis for finding Plaintiff's depression, carpal tunnel syndrome, and headaches as nonsevere impairments, and for failing altogether to discuss other impairments that were diagnosed by physicians. Plaintiff further contends that the ALJ erred in his RFC analysis for improperly discrediting medical opinions, Plaintiff's symptom testimony, and laywitness testimony.

A. Step Two – Severity

Under the regulations, the procedure at step two is as follows:

> At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. ... If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

Thus, at step two, a claimant can only be prejudiced by a finding that he has no severe impairments at all; otherwise, he advances to the next steps. The later steps do not make use of the step two finding. Instead, the ALJ must consider all of Plaintiff's limitations, again and in even greater depth. *See Taylor v. Comm'r of Soc. Sec. Admin*., 659 F.3d 1228, 1233 (9th Cir. 2011) (at step three, ALJ must consider "the combined effect of [Plaintiff's] limitations, both severe and non-severe," to determine whether they meet or equal a listing); 20 CFR 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity" for use at steps four and five). In other words, the impairments identified at step two are not intended to be a comprehensive survey. Step two is simply "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).

9

Even if the finding an impairment to be not severe at step two constituted legal error, the omission could only prejudice the claimant in steps three through five. *Burch*, 400 F.3d at 682. Given that step two is "a de minimis screening device," and given that subsequent steps impose an independent obligation to consider all impairments—severe and non-severe, singly and in combination—the caselaw supports the view that the omission of an impairment at step two can only be harmful if it persists at these latter steps.

Here, the ALJ found that Plaintiff's osteoarthritis was Plaintiff's only severe impairment. Plaintiff passed the step two "screening test" and advanced to the next steps in the sequential evaluation where the ALJ addressed and considered Plaintiff's depression, and complaints related to her hands, knees, left-shoulder, and back pain. Plaintiff argues in her appeal that her depression, carpal tunnel syndrome ("CTS"), and headaches should have been found severe at step two. Plaintiff also argues that Plaintiff had additional medically determinable impairments that were not addressed at this step.

However, because the ALJ addressed Plaintiff's impairments in the subsequent steps of the sequential evaluation, even if finding depression, CTS, and headaches were not severe and failing to address certain other impairments was legal error, these omissions are not prejudicial. In addition, Plaintiff still bears the burden at step-two to prove that her impairments significantly limited her ability to do basic work activities. Plaintiff does not present any argument nor does the evidence support a conclusion that these impairments limited Plaintiff's ability to do basic work activities at all. Notwithstanding, the Court will address some impairments in further detail.

*1. Depression*

The ALJ carefully considered Plaintiff's depression before determining it to be a nonsevere impairment. The ALJ considered each step of the paragraph B criteria and found that, despite her depression, Plaintiff was without significant restrictions to her daily activities, able to function socially, and fully oriented with intact cognition, concentration, attention and memory. The ALJ also supported his conclusions with evidence from the record. Therefore, the ALJ's finding that Plaintiff's depression was not a severe impairment is supported by substantial evidence in the record and without legal error. Plaintiff's mental functional limitations will be discussed in further

10

detail in the RFC discussion to follow.

Plaintiff also argues that the ALJ erred in finding that Plaintiff's depression was not severe because he improperly rejected Dr. Murillo's opinion. The ALJ did not specifically discuss Dr. Murillo's opinion at the step two analysis, but at the RFC analysis. The Court will also address Dr. Murillo's opinion in the RFC discussion.

### 2. Carpal Tunnel Syndrome

Plaintiff argues that the ALJ should have found that Plaintiff had a severe impairment of CTS. However, there is no clinical finding of CTS by a neurologist or any other physician. The ALJ only discusses "complaints related to [Plaintiff's] hands." Plaintiff relies on a nurse practitioner's CTS conclusion, which is not an acceptable medical source that may provide evidence to establish an impairment. See 20 C.F.R. § 404.1513(a). Statements by nurse-practitioners may be used to show the severity of symptoms. 20 C.F.R. § 404.1513(d)(1). Neuropathic medication prescribed by Ms. Hall did not address her hand numbness or pain and Plaintiff did not see a neurologist. Further, in 2012 Ms. Hall referred to Plaintiff's hand complaints as related to arthritis. Plaintiff does not provide any evidence to suggest that her complaints related to her hands and wrists was distinct from her osteoarthritis impairment.

Only medically determinable impairments are considered at step two of the sequential evaluation process. The medical record does not indicate that Plaintiff's complaints relative to her hands were determined to be CTS. Hence, the ALJ did not err in failing to find CTS to be severe.

### 3. Other Impairments

Plaintiff argues that her headaches should have been found to be severe. She also argues that she was diagnosed with several other medically determinable impairments that were not discussed by the ALJ at step two, including headaches, knee impairment, rotator cuff syndrome, nerve impingement, and general anxiety disorder, and that the ALJ's failure to discuss these impairments is reversible error.

As discussed above, Plaintiff does not meet her burden to prove that these impairments limited her ability to do basic work activities. Ms. Hall stated that Plaintiff's headaches were controlled with medication, and Dr. Hassan found that Plaintiff did not have headaches. In

addition, the ALJ discussed complaints relative to her knees, left-shoulder, and back, and anxiety in the RFC analysis, so any error in failing to mention these impairments is without prejudice.

B. RFC

Plaintiff contends that the ALJ's RFC analysis was flawed because he improperly discredited Dr. Murillo's opinion, Dr. Hassan's opinion, Plaintiff's symptom testimony, and lay witness testimony.

*1. Weighing Medical Evidence*

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S.S.R. 96-5p, 1996 SSR LEXIS 2.

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id*. The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Once a court has considered the source of a medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the

uncontradicted opinion of a treating or examining medical physician only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. The controverted opinion of a treating or examining physical can only be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *citing Magallanes*, 881 F.2d at 752. The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. The ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

        a.  Dr. Murillo

Plaintiff argues that Dr. Murillo's opinion should be afforded great deference because Dr. Murillo was a treating physician, and the ALJ did not give adequate reasons to discredit it. However, the Court concludes that substantial evidence supported the ALJ's determination to discredit Dr. Murillo's opinion.

As summarized above, Dr. Murillo's opinion indicated that Plaintiff had a poor ability in several areas of mental functioning, including understanding, remembering, and carrying out complex instructions, and maintaining concentration. Dr. Murillo also marked that Plaintiff had a fair ability to understand, remember, and carry out simple instructions. Dr. Murillo opined that Plaintiff had moderately impaired concentration, memory, and judgment. The ALJ gave Dr. Murillo's opinion no weight because it was not supported by her clinical treatment notes which indicated that Plaintiff was doing well on medications without adverse side effects, that her memory was good, and that she was functional because she was able to take the train to visit her daughter, interact with friends and groups, and attend to her basic needs. The ALJ further

explained that Dr. Murillo's opinion was inconsistent with Dr. Bilik and Dr. Biala's opinions, which indicated only mild mental impairments.

The record provides substantial evidence to support the ALJ's position. First, the ALJ's conclusion that Dr. Murillo's opinion is not supported by the record is reasonable. Dr. Murillo's treatment notes from 2010 indicate that Plaintiff's memory, thought process, judgment, and insight were intact in May, July, and August 2010. AR 487, 488, 489. In September, November, December 2010, and February, April, June, May, July, September, October and December 2011, Dr. Murillo completed mental status examinations and indicated each time that Plaintiff's recent, and long-term memory was good, and that her insight and judgment were good. AR 533, 540, 547, 554 (July exam completed by Dr. Raypon), 560, 567, 573, 579, 585, 591, 597. Further, Dr. Murillo also noted that Plaintiff "can function with friends and groups w/ her current meds. Currently doing well with current meds. She wants to refill same meds. and dosage. She is able to care for her basic needs." See AR 534. Dr. Murillo's opinion that Plaintiff's memory and judgment are moderately impaired, and that she cannot usefully perform mental functions at work, does not appear to be supported by her own treatment history with Plaintiff.

Further, the opinions of Dr. Bilik and Dr. Biala provided opinions contradicting Dr. Murillo's. Their opinions that Plaintiff does not have moderate functional limitations associated with depression are supported by the record. In addition to demonstrating that Plaintiff had good memory, judgment, and thought process, the mental status examinations mentioned above consistently indicated that Plaintiff's mood and behavior was unremarkable, her attitude was cooperative and pleasant, and her thought process was logical and goal-directed.

The ALJ set forth the ways in which Dr. Murillo's opinion was contradictory, and unsupported by her treatment notes in the record. ALJ interpreted the evidence and assessed no functional limitations on account of mental impairments. Findings that Dr. Murillo's opinion was not supported by the record and that Drs. Bilik and Biala's contradictory opinions were supported by the record are specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Murillo's opinion.

b. <u>Dr. Hassan</u>

Examining physician Dr. Hassan opined that Plaintiff could only stand or walk for four hours in an eight-hour workday and could not perform overhead work. Nonexamining physician Dr. Chan asserted that these limitations were too restrictive and opined that Plaintiff could stand or walk for six hours in an eight-hour workday, and could reach overhead frequently. The ALJ adopted these restrictions into his RFC assessment and found Dr. Hassan's assessment to be too restrictive because the limitations were not supported by his examination findings which indicated no need for the use of any assistive device to walk, normal neurological findings, and normal gait, and because it was not supported by other objective findings elsewhere in the record which also found Plaintiff to have normal gait, stance, and range of motion in both arms. The ALJ gave great weight to Dr. Chan's opinion because it was supported by and consistent with the other medical evidence. Plaintiff argues that reliance on Dr. Chan's opinion alone is a legally inadequate reason to discount Dr. Hassan's opinion, and that Dr. Hassan's opinion was not inconsistent internally nor with the objective findings in the medical record.

Here, the ALJ gave sufficient reasons, supported by substantial evidence in the record, for rejecting Dr. Hassan's opinion. The ALJ's finding that Dr. Hassan's opinion is not supported by his own examination findings is reasonable. Dr. Hassan found that Plaintiff did not use an assistive device for ambulation and was independent in activities of daily life. He found that she was negative for joint pain, and had a normal motor system, gait, cervical spine extension, hip flexion, knee extension and flexion, and ankle flexion. He found that Plaintiff was somewhat limited in lumbar spine flexion and left shoulder flexion and abduction. His conclusions that Plaintiff can only stand or walk for a total of four hours and cannot reach perform overhead work at all, which would preclude Plaintiff's ability to work, appear to be too restrictive in the face of largely normal objective findings.

In addition, the ALJ found that the record indicates that Plaintiff had a normal gait and stance and did not require an assistive device for ambulation by citing to Ms. Hall's notes. Plaintiff counters that Dr. Kang found that Plaintiff's ambulation was slow and painful. However, the ALJ noted that Dr. Kang's reports of abnormalities were subjective and disproportionate to

15

objective findings revealing normal physical findings. Also, Dr. Hassan's assessment of a visual impairment is not supported by the medical record. Dr. Hassan assessed a visual impairment limiting precision work, whereas no other medical professional assessed a visual limitation and Plaintiff did not complain of visual limitations. Dr. Hassan's restriction precluding overhead work is also contradicted by Plaintiff's testimony that she cares for her basic needs including bathing and shopping.

Further, the ALJ found that Dr. Chan's opinion is supported by the record by way of Plaintiff's treatment history, the objective diagnostic studies, and the findings on examinations. As discussed above, an examining physician's opinion may be discounted by a contradictory opinion by a non-examining physician when that non-examining physician's opinion is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Chan's opinion correlates to the objective examination results which reveal mostly normal findings with some limitations in the upper left extremity and back, but not which would preclude Plaintiff's ability to work.

The ALJ set forth a factual summary of Plaintiff's physical medical record and addressed conflicts within Dr. Hassan's opinion, between Dr. Hassan and Dr. Chan's opinions, and with the objective findings in Plaintiff's medical record. The ALJ interpreted the evidence and found that the record supported a finding that Plaintiff could walk or stand for six hours in an eight-hour workday and reach overhead frequently. Findings that Dr. Hassan's opinion was not supported by the record and his own examination, and that Dr. Chan's was, are specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Hassan's opinion.

*C.  Plaintiff's Credibility*

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject her subjective symptoms testimony. Plaintiff argues that the ALJ's interpretation of the evidence misrepresents the overall record.

The Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably

16

be expected to produce some degree of symptom. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's subjective symptom testimony so long as it is not the only reason for discounting her testimony. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533

17

F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC analysis. The ALJ's credibility determination was legally sufficient and supported by substantial evidence.

First, the ALJ discusses that the alleged severity of Plaintiff's symptoms are unsupported by the objective medical evidence. The ALJ discussed x-rays and studies from 2011 which found no pathology in the right ankle and only mild degenerative osteoarthritic changes in the left knee and lumbar spine. In 2011, studies revealed normal bone density and antinuclear antibody and sedimentation rate. Plaintiff tested negative for rheumatoid factor. Dr. Hassan found normal neurological functions in his examination.

The ALJ went on to discuss Plaintiff's course of treatment for pain associated with osteoarthritis. The record indicated that Plaintiff received injections by Dr. Kang for pain management over the course of two years and that her pain was managed by these injections.

The ALJ also discussed inconsistent statements within Plaintiff's testimony. Plaintiff expressed fear of public transportation, but Plaintiff frequently took the bus to her appointments, and she had taken the train to visit her daughter. Plaintiff testified that she was unable to be around other people, but she also testified that she was able to function with friends and groups including attending Catholic Church services and receiving visitors at home.

The ALJ also discussed Plaintiff's daily activities and that they reflect significant mental and physical functioning, which is contrary to Plaintiff's claim of totally disabling symptoms. The evidence shows that Plaintiff lived alone and was able to do household chores, prepare meals, pay bills, shop, and use public transportation. Plaintiff also had hobbies including reading, watching TV and crafting.

In his credibility analysis, the ALJ discussed Plaintiff's medically determinable

1    impairments including her anxiety, arthritis, and complaints related to her shoulder and back. The
2    ALJ found that the objective findings in Plaintiff's medical record did not support her symptom
3    testimony, that her testimony had inconsistencies, and that her daily activities reflected significant
4    functioning. Taken together, these reasons are sufficiently specific, legally permissible grounds
5    which are supported by substantial evidence in the record to discount Plaintiff's credibility.

6        *D.  Lay Witness Statements*

7        Plaintiff's acquaintances submitted statements, which the ALJ considered and gave no
8    weight. Plaintiff does not identify which lay witness statements the ALJ inadequately rejected.
9    Plaintiff only argues that the reasons given by the ALJ to give no weight to the lay witness
10   statements were not germane to each witness as required by law and that the lay witness
11   statements were supported by the record.

12       Lay witness testimony is competent evidence to which the ALJ, if he wishes to discount
13   lay witness testimony, must give reasons germane to each witness. *Stout v. Comm'r, Soc. Sec.*
14   *Admin.*, 454 F.3d 1050 (9th Cir. 2006). The Ninth Circuit has held that inconsistency with medical
15   evidence constitutes a legitimate reason for discrediting the testimony of lay witnesses. *See*
16   *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Bayliss v. Barnhart*, 427 F.3d
17   1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). To the extent that
18   the lay witness statements were of the same general nature as the subjective complaints from the
19   plaintiff's testimony, the ALJ's legally sufficient reasons for rejecting the plaintiff's subjective
20   symptom testimony also constituted legally sufficient reasons for rejecting the lay witness
21   statements. *See Valentine v. Commissioner, Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).
22   Further, an ALJ's failure to comment on lay witness testimony is harmless where the same
23   evidence that the ALJ cited in discrediting the claimant's testimony also discredits the lay witness'
24   claims. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

25       The ALJ specifically discussed statements supplied by Aura Patridge, Juan Garcia, and
26   Maria Cota. First, as to Aura Patridge, the ALJ wrote that her statements were inconsistent with
27   medical findings and medical source opinions. Next, the ALJ accorded no weight to Juan Garcia's
28   statement for similar reasons. Lastly, the ALJ rejected Maria Cota's statements for the same

reasons and because they were internally inconsistent. Therefore, the ALJ gave reasons germane to each individual lay witness. Also, as discussed in the prior section, the ALJ discounted Plaintiff's symptom testimony partly because it was inconsistent with medical findings and opinions. These lay witness statements relate similar symptom testimony as Plaintiff's testimony. Hence, the ALJ's discussion in rejecting Plaintiff's symptom testimony for inconsistency with the medical findings is also sufficient for rejecting the lay witness statements.

### IV. Conclusion and Order

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated: **March 25, 2015**          **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE